# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**LORI SIMON**,

        Plaintiff,

                                   No. 15-CV-10202

vs.                             Hon. Gerald E. Rosen

                            Magistrate Judge David R. Grand

**JPMORGAN CHASE BANK, N.A.**,

        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff Lori Simon brought this case under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, alleging that Defendant JPMorgan Chase Bank, N.A. ("Chase") -- with whom Plaintiff maintained two bank accounts -- made an unauthorized electronic transfer of $51,526 from her personal checking account. Defendant maintains that the transfer was made not from Simon's personal account, but rather from a savings account that Plaintiff maintained jointly with her husband, and was made pursuant to a levy that the State of Michigan had placed on the account because Plaintiff's husband owed over

1

$80,000 in child support payments to the State.  Defendant has now filed for summary judgment in the matter, and that motion has been fully briefed.

Having reviewed and considered the parties' briefs and supporting documents and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide the parties' motions "on the briefs." *See* L.R. 7.1(f)(2).  This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

The facts leading up to the allegedly unlawful transfer in this matter are undisputed.  Plaintiff maintained two bank accounts with Defendant: (1) a joint savings account with her husband Keith Simon, ending in the number 2337 (the "Joint Account"), and (2) a personal checking account ending in the number 3770 (the "Personal Account").

On May 28, 2014, Defendant received a letter from the State of Michigan Office of Child Support Lien and Levy Enforcement notifying Defendant that Keith Simon owed the State $85,189 in unpaid child support.[1]  May 28, 2014 Notice of Lien and Levy Disclosure, Dkt. # 11, Ex. 3.  The document notified Defendant that the lien "attaches itself to any and all applicable accounts of the

---

[1] The parties do not provide any description of why child support was owed, or to whom it was to be ultimately paid.

2

above-named obligor pursuant to MCL 552.625c." *Id.* It further notified
Defendant that, pursuant to Michigan law, it was required to "freeze the obligor's
or other account holder's assets or funds up to the amount identified on the Notice
of Lien" and that Keith Simon had 21 days to challenge the lien. *Id.* Last, it
provided that, if 28 days passed from the time Keith Simon was given notice of the
lien without any payment from him, Defendant was to "send the frozen assets to
the Michigan State Disbursement Unit." *Id.*

Defendant subsequently placed a hold on all assets in the Joint Account. On
May 30, 2014, Defendant provided notice of the May 28 letter to Keith Simon and
advised him that a hold had been placed on the Joint Account pursuant to the May
28 letter. May 30, 2014 Asset Freeze Notice Letter, Dkt. # 11, Ex. 4. Simon did
not respond to the letter. The parties do not dispute any of these facts.

From this point forward, however, the parties have divergent accounts of
what happened. According to Defendant, on June 25, 2014, Chase's Court Orders
and Levies department ("COAL") debited $51,523.36 from the Joint Account (the
"Debit"), pursuant to the instructions from the May 28 letter, and subsequently
removed the hold that had been placed on the account. Defendant supports this
claim with a monthly account statement of the Joint Account that indicates a debit
was made on June 25 from the Joint Account for the amount of $51,523.36 with
the description "Nas-Coal," Joint Account Monthly Statement, Dkt. # 11, Ex. 5, as

well as a cashier's check in the amount of $51,523.36, dated June 26, 2015, and made out to the Michigan State Disbursement Unit. Cashier's Check, Dkt. # 11, Ex. 6.

Then, according to Defendant, "On June 26, 2014, Plaintiff and/or [Keith] Simon attempted an online transfer from the Joint Account to Plaintiff's Account in the amount of $51,526.00." Pl.'s Mot. for Summ. J., Dkt. #11, at 2. Defendant supports this assertion by pointing to a line in the monthly statement of the Joint Account denoting a "Returned Item Fee For An Unpaid . . . Transfer to Chk," reflecting a fee for an attempt to transfer with insufficient funds (because the funds in the Joint Account had been paid in partial satisfaction of the levy) as well as a letter sent to Plaintiff on June 26, 2014, informing her that "The items(s) listed below were presented for payment against your account; however, you didn't have enough money to cover them" and indicating the attempted $51,526 transfer. June 26, 2014 Insufficient Funds Notice, Dkt. # 11, Ex. 7. Further, the monthly statement for Plaintiff's Personal Account indicates both a deposit and a withdrawal in the amount of $51,526 on June 27, which Defendant asserts is the typical way in which an insufficiently funded transfer would be reflected on a statement. Personal Account Monthly Statement, Dkt. # 11, Ex. 8. Plaintiff never responded to the insufficient funds notice that Defendant sent her.

4

Plaintiff's account of this time period is substantially different. She asserts that, after learning about the hold on the Joint Account from the May 28 letter, she accessed the Account on June 26, 2014, at 12:01 AM. According to her affidavit, she "went on-line and discovered that the hold was removed; the screen for the joint account had the words, "HOLD REMOVED" on it." Lori Simon Aff., Dkt. # 16-2, ¶¶ 2-6. She also asserts that, at that time, the Personal Account "had a negative balance of $-249.13," and, at that time, she was unable to perform transactions against the Personal Account. *Id.* ¶ 7. Then, at 2:51 AM on the same day, Plaintiff allegedly "awoke and found that [her] money was now available in the joint account, a total of $51,526.73. This was the amount of the hold plus $3.37 in interest." *Id.* ¶ 8. Plaintiff claims that she then transferred $51,526 from the Joint Account into her Personal Account. *Id.* ¶ 9. Plaintiff provides no evidence, other than her bare affidavit, of any of these claims. She further asserts that the bank statements provided by Defendant were incorrect and "back-dated." Pl.'s Resp. to Def.'s Mot. for Summ. J., Dkt. # 16, at 4.

Then, "[t]o make sure that the transfer actually occurred," Simon Aff. ¶ 10, Plaintiff performed several transactions using her Personal Account, including a $500 withdrawal using an ATM, a $65.91 purchase from a gas station, and a DirecTV payment of $141.64. *Id.* ¶¶ 10-12. Plaintiff provides documentation of the ATM and DirecTV transactions in the form of receipts, *see* Debit Receipts,

5

Dkt. # 16-3, and her Personal Account monthly statement reflects all three transactions, *see* Personal Account Monthly Statement, Dkt. # 11, Ex. 8. According to Plaintiff, these three transactions "demonstrate the successful deposit of the subject funds from the joint account into Plaintiff's checking account on June 26, 2014 and act as an admission of that successful deposit as Chase communicated to the various institutions that these funds were available in an account that had a negative balance prior to the deposit." Pl.'s Resp. to Def.'s Mot. for Summ. J., at 3. Further, Plaintiff claims that on June 26, 2014, Keith Simon "spoke by phone with representatives of the Defendant bank" and that "[d]uring those phone conversations, two representatives of Chase told [him] that it did not matter that the funds had been transferred" and thus "admitted that on June 26, 2014, $51,526 had been transferred from [the Joint Account] to [Plaintiff's] personal checking account." Keith Simon Aff., Dkt. # 16-4, ¶¶ 2-4. Plaintiff provides no evidence of these conversations other than Keith Simon's affidavit.

From this point forward, the facts are again undisputed. On September 22, 2014, Plaintiff mailed a letter to Defendant stating that Defendant "withdrew $51,520 from [her] account" and that Plaintiff "did not authorize this withdrawal." September 22, 2014 Letter from Lori Simon to JPMorgan Chase Bank, Dkt. # 11, Ex. 9. Plaintiff wrote, "Please consider this correspondence my request that you investigate this illegal withdrawal and return these funds immediately." *Id.*

Apparently Defendant did not respond to that letter, and Plaintiff initiated this action on January 21, 2015. In her Complaint, Plaintiff claims that Defendant, by transferring money from her Personal Account without her authorization, "engaged in an unauthorized electronic fund transfer," in violation of the EFTA. Pl.'s Compl., Dkt. # 1, ¶ 19. Plaintiff's Complaint also list claims for statutory conversion, in violation of M.C.L. § 600.2919a, and common law conversion, *id.* ¶¶ 22-25, though Plaintiff has indicated in her briefing that she "agrees to dismiss" both of those claims, Pl.'s Resp. to Def.'s Mot. for Summ. J., at 8. Defendant subsequently filed a Motion for Summary Judgment, asserting that Plaintiff has failed to provide adequate factual support for her claims, and that even if her claims are factually true, she has not properly made out a claim under the EFTA. Dkt. # 11.

### III. DISCUSSION

#### A.    Rule 56 Standard

Through its present motion, Defendant seeks summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under that Rule, summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the

plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In addition, where a moving party seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (emphasis and citation omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party.  *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006).  Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed."  Fed. R. Civ. P. 56(c)(1).

## B.    Analysis

Since Plaintiff has withdrawn her state law claims, her only remaining claim relies exclusively on the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, which federal government enacted the EFTA as part of the

comprehensive Consumer Credit Protection Act, Pub. L. No. 95–630 § 2001, 92 Stat. 3641 (1978) (codified as amended at 15 U.S.C. § 1601 *et seq.*). "The EFTA protects individual consumer rights by 'provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" *Clemmer v. Key Bank Nat. Ass'n*, 539 F.3d 349, 351 (6th Cir. 2008) (alteration in original) (quoting 15 U.S.C. § 1693(b)).

There are several problems with Plaintiff's claim. First, the Court is unable to identify the substantive law in the EFTA on which Plaintiff relies. Plaintiff's Complaint refers to 15 U.S.C. § 1693a -- the "Definitions" section of the EFTA -- for the proposition that an "'electronic fund transfer' [is] 'any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.'" Pl.'s Compl. ¶ 18 (quoting 15 U.S.C. § 1693a(7)).[2] The Complaint then simply quotes the entirety of § 1693m -- the section of the EFTA that provides for a federal civil cause of action for any violation of the EFTA. *Id.* ¶ 20. Section 1693m provides, in relevant part, that "[e]xcept as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to

---

[2] Plaintiff's complaint incorrectly cites § 1693a(6) and (9) for this quote. Pl.'s Compl. ¶ 18.

any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer . . . ."  15 U.S.C. § 1693m.  But Plaintiff refers to no provision of the EFTA demonstrating that Defendant committed a substantive violation, even if every fact pled by Plaintiff is true.[3]  That is to say, she points to no provision that would make Defendant's conduct as pled unlawful under the ETFA.  Nor does Plaintiff refer to a single case with similar factual circumstances in which an EFTA violation was found.

Defendant does not argue this flaw as a basis for its Motion, however, and so the Court disregards the problem for the moment and instead focuses on the issues raised by Defendant.  Defendant's first -- and primary -- argument supporting its Motion is that it has shifted the burden of production to Plaintiff by bringing forth evidence that Plaintiff's attempted transfer of money from the Joint Account to the Personal Account never occurred (which, is, presumably, a prerequisite for Plaintiff's EFTA claim that Defendant made a transfer that was not authorized through the State's levy, because her husband was a named holder on the Joint Account but not on the Personal Account).  Defendant further argues that Plaintiff has failed to shift the burden back to Defendant by pointing to evidence in the record that demonstrates a genuine issue of material fact.  The Court agrees.  "A

---

[3] The EFTA does contain a section providing for the "Liability of Financial Institutions."  15 U.S.C. § 1693h.  That section provides substantive liability for an institution's *failure* to properly make certain transactions where a plaintiff requested one.  *Id.* § 1693h(a).

movant for summary judgment meets its initial burden 'by showing -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.'" *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013) (quoting *Dixon v. Anderson*, 928 F.2d 212, 216 n.5 (6th Cir. 1991)) (internal quotation marks omitted).  "The non-movant then must set forth specific facts showing that there is a genuine issue for trial."  *Id.* While the Court may not resolve disputes of fact or determine matters of credibility where the parties disagree as to a material fact, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (emphasis added).

Here, Defendant has "point[ed] out to the district court" substantial evidence indicating that there was no transfer of money between the Joint Account and the Personal Account.  It has provided the monthly statements of both accounts, the cashier's check, and the insufficient funds notice that was issued when the attempted transfer failed.  The two affidavits that Plaintiffs relies on assert a contrary story and claim that the monthly statements were somehow falsified, but in their essence, both affidavits merely restate the allegations made in the complaint.  *See, e.g.*, *Zenith Vinyl Fabrics Corp. v. Ford Motor Co.*, 357 F. Supp. 133, 138 (E.D. Mich. 1973) ("There is substantial authority to the effect that an

11

affidavit which merely restates the allegations of the complaint should be disregarded."); *Moore v. N. Am. Rockwell Co.*, 16 Fed. R. Serv. 2d 145 (E.D. Mich. 1972) ("In the affidavit before this court, plaintiff has merely restated the conclusory allegations of his complaint or has simply denied the truth of defendants' affidavits. Having stated only conclusions, his affidavit does not by itself create any issues of fact which would make summary judgment inappropriate."); *Maclin v. Tipton Cty., Tenn.*, No. 2:10-CV-02468-CGC, 2011 WL 130161, at *5 (W.D. Tenn. Jan. 14, 2011) ("Although the Court considers an affidavit filed by a plaintiff as sound evidence that could refute a proper motion for summary judgment, the substance of this Affidavit is minimal at best and in essence merely restates his allegations in the Complaint.").  If such an affidavit were sufficient to survive summary judgment, Rule 56 would become entirely toothless, as a plaintiff would merely have to provide an affidavit asserting that the facts as laid out in the complaint are true, regardless of any lack of evidence supporting the veracity of the claims made in the affidavit.  Plainly, Plaintiff has pointed to no evidence that any reasonable juror could possibly find has rebutted Defendant's clear record evidence supporting its position.

Plaintiff contends that she has put forth evidence other than the two affidavits in support of her factual claims.  She points to the three transactions that she made using her personal account between June 27 and June 30 (the ATM

12

withdrawal, gas station purchase, and DirecTV payment), asserting that if the alleged $51,526 transfer into the Personal Account had not occurred, she would not have had sufficient funds to make those transactions, as the Personal Account had a negative balance prior to the alleged transfer.  Pl.'s Resp. to Def.'s Mot. for Summ. J., at 4-6.  But Defendant rebuts this contention, explaining that "is no support . . . in fact that she would be unable to complete any transactions while her account was overdrawn."  Def.'s Reply, at 4.  Plaintiff, once again, points to no evidence establishing that she would have been unable to make the three transactions without the alleged transfer having successfully been made to her Personal Account.

While it is clear that Plaintiff has failed to demonstrate an issue of material fact that would prevent summary judgment, the Court need not even rely on such a finding in order to grant Defendant's Motion.  Even assuming all of the contentions in Plaintiff's and her husband's affidavits are true, Michigan law bars Plaintiff's recovery.  M.C.L. § 552.625d(4) states that

> A financial institution, insurer, or carrier that forwards financial assets, money to be paid, or compensation to the title IV-D agency in response to a levy . . . is discharged from any obligation or liability to the depositor, account holder, or other person with an interest in the financial assets, money to be paid, or compensation forwarded to the title IV-D agency.

The evidence presented here -- namely the cashier's check made out to the Michigan State Disbursement Unit -- clearly demonstrates that any "unauthorized

13

transaction" made by Chase was a "forward[ing]" of "financial assets . . . in response to a levy." Accordingly, Chase cannot be held liable for that forwarding.

*   *   *

As a final matter, the Court finds it necessary to note the troubling nature of this case. The conduct of Plaintiff and her husband appears to be, based on all of the records presented to the Court, a calculated attempt to avoid child support obligations by seeking to hide money in Plaintiff's personal account. And when that apparent attempt failed, Plaintiff elected to file a lawsuit in a second attempt to avoid payment. Plaintiff's counsel also bears responsibility -- he is bound by Rule 11 to make an "inquiry reasonable under the circumstances" to ensure that "the factual contentions have evidentiary support" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law." Fed. R. Civ. P. 11(b). It does not appear that he met either obligation here, as even a cursory review of the bank records, not to mention controlling law, should have caused him to immediately reconsider his decision to pursue this litigation.

However, in the spirit of the holiday season, the Court will not order Plaintiff to show cause as to why sanctions under Rule 11 should not be entered against Plaintiff's attorney or against Plaintiff herself. Nevertheless, both Plaintiff

14

and her attorney should consider themselves warned that the Court takes these rules seriously, and future cases of this nature could result in monetary sanctions.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Dkt. # 11) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**


Dated:  December 14, 2015          s/Gerald E. Rosen
                                   Chief Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 14, 2015, by electronic and/or ordinary mail.

                                   s/Julie Owens
                                   Case Manager, (313) 234-5135

15